a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES CRAIG JOHNSON, JR. #354054, Petitioner | CIVIL DOCKET NO. 1:22-CV-01498 SEC P |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| TIM HOOPER, Respondent | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by pro se Petitioner James Craig Johnson, Jr. ("Johnson"). ECF No. 1. Johnson is an inmate in the custody of the Louisiana Department of Corrections incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Johnson challenges his conviction and sentence imposed in the Ninth Judicial District Court, Rapides Parish, Louisiana.

Because Johnson does not established entitlement to habeas relief, his Petition (ECF No. 1) should be DENIED and DISMISSED.

I. Background

On the afternoon of January 4, 2012, the body of Jacqueline Bazert was discovered on the floor of her home in Alexandria, Louisiana. Ms. Bazert had been stabbed 137 times. *State v. Johnson*, 2014-710, p. 1 (La. App. 3 Cir. 12/10/14); 155 So.3d 671, 67.

Corporal Vercher testified at Johnson's trial that he was dispatched to Ms. Bazert's residence. He spoke with a neighbor, Stephanie Williams, upon his arrival. ECF No. 13-19 at 42, 51. Johnson looked inside the front door and saw the victim lying on her back with multiple wounds. ECF No. 13-19 at 43. Paramedics confirmed that Ms. Bazert was deceased. *Id.* at 45, 56.

Lieutenant Bordelon testified that the victim's body was approximately two feet inside the doorway. Her pants were pulled down to her lower legs and she had numerous stab wounds around her neck and face. ECF No. 13-19 at 51.

Sergeant Bates testified that the house appeared to have been searched by the killer, who likely wore gloves based on the absence of finger prints and the bloody smears on drawers and walls throughout the house. ECF No. 13-19 at 75-93.

In the victim's bedroom, items were strewn around the room and drawers were pulled out and rifled through. *Id.* at 91; 13-20 at 28. Sergeant Bates discovered a footprint pressed into some clothing on the floor. From the print, he determined that the shoe was a Nike Air Force One sneaker. *Id.* at 91-97. A photograph of the shoe print was shown to the jury. The same print was found pressed into a shirt on the floor of the living room, close to the victim's body. *Id.* at 97-98.

Later the same evening, Sgt. Bates was called to a residence where Johnson lived with his girlfriend, Latonya Spradley. ECF No. 13-22 at 84-85. Ms. Spradley gave permission for officers to search the premises. *Id.* at 87. Officers removed one pair of Johnson's Air Force One sneakers from the porch. *Id.* Ms. Spradley testified

that Johnson had come home with blood on his pullover shirt and jeans, which Johnson claimed was paintball dye.[1]  *Id.* at 92.  Spradley's sister, who lived with Johnson and Spradley, testified that she did not see any blood on Johnson's clothing when he arrived home.  ECF No. 13-24 at 9-11.  Kevin Young testified that he gave Johnson a ride home at around 11:00 p.m. and did not see any blood on his clothes.

Kenterrick Martin "Martin" testified that he was with Johnson during the afternoon and evening the date of the murder.  ECF No. 13-24 at 18.  He testified that around midnight, while they stood outside his mother's house, Joseph Wilkerson, also known as "JW," walked up to them wiping off a knife.  ECF No. 13-24 at 21.  JW bought a rock of cocaine and paid Martin with a twenty dollar bill.  *Id.*  Mr. Martin stated he then walked with Johnson to the store where Johnson got a ride home.  *Id.*

Martin testified that the next morning after he heard about the victim's death, he examined the twenty dollar bill and saw "red stains," later described as blood on the bill.  *Id.* at 24.  He explained he went to the store and spent the money because he did not want anything to do with it.  *Id.*  Martin further testified that he was currently incarcerated and had several prior convictions for burglaries, possession of a controlled dangerous substance with intent to distribute, and theft.  *Id.* at 27-28.

Devon Jordan ("Jordan") testified he was with Johnson and Martin the night the murder when JW approached them in the street.  Jordan stated he went into a

---

[1] Spradley previously gave different statements about whether Johnson had blood on his clothing and what Johnson told her.  ECF No. 13-22 at 94-100; No. 13-23 at 1-5.

3

friend's house, and, when he came out, JW was gone. Johnson and Martin then left the area, heading down the street. Jordan also admitted he had a criminal history of violent crimes and drug convictions. ECF No. 13-24 at 35.

Joann Taylor ("Taylor") testified that JW was living with her at the time of this incident. She stated that when she came home around 9:00 the evening of the murder, there were drops of blood all over her bathroom floor and in JW's bedroom. ECF No. 13-24 at 45-46. Taylor stated that JW had asked her granddaughter for a band-aid because he had cut his little finger. *Id.* at 47. Taylor testified that JW had scratches on his neck and that he was acting real "jittery." *Id.* at 47-48.

Taylor mentioned a prior incident wherein JW had lunged at her with a broken steak knife. *Id.* at 49. She testified that JW hurriedly left town three days after the victim was killed. She called the police and told them to come get a bloody comforter that was on his bed. Taylor stated that Detective Fairbanks came and got the comforter, but she never heard anything of it thereafter. *Id.* at 52.

Detective Fairbanks and Sgt. Bates went to Taylor's house after receiving a call indicating that she had information about Ms. Bazert's death. However, Taylor told them that she had washed the bedding, including the comforter. The officers did not see any blood on the bedding. ECF No. 13-24 at 69-83.

Johnson was convicted of the second-degree murder of Ms. Bazert, and was sentenced to life imprisonment. *State v. Johnson*, 2014-710, p. 1 (La. App. 3 Cir. 12/10/14); 155 So.3d 671, 672. Johnson appealed alleging insufficient evidence and a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *See id.*; *writ denied*, 2015-

0014 (La. 10/30/15); 179 So.3d 614. However, his conviction and sentence were affirmed. *Id.*

Johnson filed an application for post-conviction relief, raising several claims of ineffective assistance of counsel. ECF No. 1-2 at 10. The application was reportedly denied. *Id.; State v. Johnson*, KW-20-00613; ECF No. 1-3 at 5-7. The Louisiana Supreme Court also denied writs. *State v. Johnson*, 2021-01940, p. 1 (La. 2/22/22); 333 So.3d 440.

In this § 2254 Petition, Johnson raises the same claims of ineffective assistance of counsel, which were presented to the state courts.

## II. Law and Analysis

### A. Habeas Corpus Standard of Review

Under 28 U.S.C. § 2254(d), a federal court may only grant relief if the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state court decision is deemed "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Jenkins v.*

*Hall*, 910 F.3d 828, 832 (5th Cir. 2018) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

"It is an unreasonable application of Supreme Court precedent 'if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.'" *Id*. quoting *Salts v. Epps*, 676 F.3d 468, 473–74 (5th Cir. 2012)). The "state court's findings of fact are entitled to a presumption of correctness" that may be overcome only by "clear and convincing evidence." *Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005).

To obtain habeas review, a petitioner must first exhaust state court remedies as to each claim raised by presenting the federal nature of each claim to each appropriate state court in a procedurally proper manner. *See O'Sulllivan v. Boerckel*, 526 U.S. 838 (1999); *Duncan v. Henry*, 513 U.S. 364 (1995) (per curiam); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). A petitioner must give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon a constitutional claim." *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004), *cert. denied*, 543 U.S. 989 (2004) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

The "fair presentation' requirement is satisfied if the federal habeas claim is the "substantial equivalent" of that presented to the state courts. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). A federal claim is not fairly presented if the state court must read beyond the petition or brief to find it. *Baldwin v. Reese*,

541 U.S. 27 (2004). A claim is unexhausted "if a petitioner presents new legal theories or entirely new factual claims in his petition to the federal court." *Wilder*, 274 F.3d at 259. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214, the federal courts are without power to grant relief on unexhausted claims. *Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003), *cert. denied*, 542 U.S. 954 (2004).

If a state court clearly and expressly bases its dismissal of a claim on a state procedural rule that provides an independent and adequate ground for the dismissal, or if the petitioner fails to exhaust state remedies rendering the claims procedurally barred by the state courts, the claim is procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Federal habeas review of a procedurally defaulted claim is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51 (1991); *see also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

### A. <u>Ineffective Assistance of Counsel.</u>

Johnson alleges that he received ineffective assistance of counsel in violation of the United States Constitution because counsel "failed to conduct adequate, independent DNA testing"; failed to file a motion to sequester experts; failed to impeach Latonya Spradley; and failed to move for mistrial. ECF No. 1-2.

The Louisiana Supreme Court denied the claim because Johnson could not meet the standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *State v. Johnson*, 2021-01940, p. 1 (La. 2/22/22); 333 So.3d 440. This Court does not decide whether the state court's *Strickland* determination was incorrect, but whether it was unreasonable, which presents a substantially higher threshold for a petitioner to meet. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

To satisfy the first prong of *Strickland*, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant has the burden of proof and must overcome a strong presumption that the conduct of his trial counsel "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

"No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (quoting *Strickland*, 466 U.S. at 688-89). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Wiggins*, 539 U.S. at 523; *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his

counsel, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694.

The Louisiana Supreme Court denied Johnson's writ application without explanation, so this Court must "look through" to the last reasoned state court decision addressing counsel's assistance, and must assume the Louisiana Supreme Court writ denial adopted the same rationale. *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). The last reasoned opinion is that of the Louisiana Third Circuit Court of Appeals. The Third Circuit applied *Strickland* and concluded that counsel's actions were reasonable, and Johnson could not show prejudice. ECF No. 13-26 at 91-93.

### D. Johnson cannot establish ineffective assistance of counsel for failing to conduct independent and adequate DNA testing and failing to challenge evidence at trial.

First, Johnson argues that his trial counsel failed to conduct independent and adequate DNA testing because certain evidence was not tested, and he failed to challenge the lack of evidence at trial. ECF No. 1-2 at 6, 19. Johnson presented this claim in the state courts.

The Louisiana Third Circuit Court of Appeal issued a thorough decision denying writs. ECF No. 1-3 at 5-7. The court ruled:

> Ineffective assistance of counsel claims are assessed by the guidelines set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). To establish an ineffective assistance of counsel claim, a petitioner must show that: 1)

9

> his defense counsel's performance was deficient, which requires a showing that counsel's errors were so serious that he failed to function as counsel guaranteed by the Sixth Amendment; and 2) such deficiency prejudiced the defense so as to deprive the defendant of a fair trial or a trial with a dependable result.
>
> In Relator's first ineffective assistance of counsel claim, he asserts his trial counsel failed to conduct independent and adequate DNA testing, as some evidence was not tested, and failed to challenge the lacking evidence at trial. During trial the State called two expert witnesses to testify regarding their analysis of the DNA evidence gathered from the scene. What the witnesses' testimony shows is that they were qualified and reliable experts. The testimony also shows that trial counsel cross-examined the experts on their techniques and raised questions about whether other suspects may have been involved. Relator has not shown how the results of the trial would have been different had trial counsel hired an independent expert to review the evidence or requested testing of the remaining evidence. In this case, defense counsel's decision not to request independent testing did not prejudice Relator and was within sound trial strategy, as reliable methods of DNA testing were used by the experts. In looking at the transcript, trial counsel was prepared, understood the methodology used, and adequately questioned the witnesses as to the reliability/unreliability of the evidence and the possibility of another person being the perpetrator. Furthermore, the results of the untested fingernail clippings would not have affected the outcome of Relator's trial, as other testimony and DNA evidence used pointed to Relator as the perpetrator.

*State v. Johnson*, KW-20-00613; ECF No. 1-3 at 5-7.

Dr. Lauren Bryan Thomason, an expert in forensic DNA analysis, testified for the State. ECF No. 13-21 at 8. She examined Johnson's Air Force One sneakers, one of which tested positive for the presence of blood. ECF No. 13-21 at 21. The DNA profile from the blood on Johnson's shoe was a mixture of one major and two minor DNA profiles—the major profile matching that of the victim. *Id.* at 22.

Dr. Thomason also examined fingernail clippings from the victim. *Id.* at 31. The clippings from the victim's fingernails contained a mixture of DNA from Johnson and the victim. *Id.*

Johnson's attorney thoroughly cross-examined Dr. Thomason. He asked about about her decision to test only a random sample of the victim's fingernail clippings. *Id.* at 40. He also questioned her decision not to test a hat that was presented to her by the police. *Id.* at 57.

Katie Trawick also testified as an expert in the field of forensic DNA analysis. ECF No. 13-21 at 60. She agreed that the DNA profile obtained from the swab of suspected blood from the toe of the right sneaker was consistent with being a mixture of at least three individuals, one major contributor and at least two minor contributors. *Id.* at 68. The profile obtained from the major contributor was consistent with the sample obtained from the victim. *Id.* at 68.

Trawick testified that she was provided with DNA samples for Joseph Wilkerson, Richard Brown, Shameka Tannehill, and Derek Taylor, in addition to Johnson and the victim. All profiles were either excludable or inconclusive as to the blood on the sneaker, except for the DNA profiles of Johnson and the victim. Wilkerson, Brown, Tannehill, and Taylor were all excluded as possible contributors for the DNA found under the victim's fingernails. ECF No. 13-21 at 67-71.

Johnson's attorney conducted another thorough cross-examination ECF No. 13-21 at 72-78. He pointed out that Johnson's DNA profile was consistent with the DNA from only one fingernail clipping. *Id.* at 76.

11

In general, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). Thus, counsel's failure to call an expert witness to conduct additional DNA testing was not ineffective assistance. Johnson's implication that additional testing would have established his innocence is unsupported, conclusory, and speculative. *Id.* Without evidence showing that the results of the DNA testing were unreliable, or that the DNA evidence presented at trial was inaccurate, Johnson cannot show prejudice. *See Wolfe v. Dretke*, 116 F. App'x 487, 495 (5th Cir. 2004).

The State court provided detailed reasons for finding that Johnson's claims regarding DNA testing did not meet the *Strickland* standard.

### E. <u>Johnson cannot establish ineffective assistance for failing to sequester expert witnesses.</u>

Next, Johnson asserts that his attorney provided ineffective assistance by failing to file a motion to sequester the expert witnesses. The appellate court noted:

> La.Code Evid. art. 615 is directly applicable and does not authorize exclusion of "a person whose presence is shown by a party to be essential to the presentation of his cause such as an expert." In this case, both Dr. Thomason and Ms. Traweek were qualified and accepted as experts. Therefore, under this article, these witnesses need not have been sequestered. Additionally, while Ms. Traweek may have relied on some of Dr. Thomason's DNA results, Ms. Traweek conducted tests that were different from Dr. Thomason's. Relator has not shown how he was prejudiced by Ms. Traweeks's testimony nor how counsel was ineffective for failing to request the witnesses be sequestered.

*State v. Johnson*, KW-20-00613; ECF No. 1-3 at 5-7.

Louisiana law provides that experts are excluded from the requirement that witnesses be sequestered from the trial. *See* La. Code Evid art. 615. Moreover, it is within the broad discretion of the trial court to determine whether to exempt a witness from a sequestration order. *See Rhone v. Boh Bros.*, 2001-0270, p. 3 (La.App. 4 Cir. 12/12/01); 804 So.2d 764, 766–67; *State v. Simien*, 95–1407, p. 8 (La.App. 3 Cir. 7/24/96), 677 So.2d 1138, 1143.

Because experts are excluded from the rule of sequestration, an objection to the experts' presence in the courtroom was unwarranted. "An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). In fact, the "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

### F. Johnson cannot show ineffective assistance regarding the questioning of witness Latonya Spradley.

Johnson asserts that his attorney failed to impeach Latonya Spradley about whether she was given a plea deal in exchange for her testimony. The state courts determined that Johnson's claims were generalized and unsupported. ECF No. 1-3 at 6.

Johnson states that Spradley gave "five different statements to detectives" during the investigation, and his attorney "impeached her concerning the differences in statements." ECF No. 1-2 at 22. He also states that trial counsel

13

"impeached [Spradley] regarding her convictions." *Id.* Spradley revealed that she was on probation and had a charge pending at the time of trial. *Id.*

Johnson alleges that his attorney should have questioned Spradley further "to determine whether any incentive was offered to her in exchange for her testimony." *Id.* at 22-23. The appellate court determined:

> In Relator's third ineffective assistance of counsel claim, he asserts trial counsel failed to impeach Latonya Spradley about whether she was given a plea deal in exchange for her testimony against Relator. Relator simply makes general statements that trial counsel was ineffective for failing to inquire about whether the witness offered a plea deal by the State. Relator has not presented any proof that there was a plea deal offered by the State. In reviewing the transcript of Spradley's trial testimony, trial counsel effectively questioned Spradley about the various inconsistent statements she made to the police. Trial counsel's actions can be considered sound strategy and not ineffective assistance, as no two criminal defense attorneys would defend a client in the same way. *Strickland,* 466 U.S. 668.

ECF No. 1-3 at 6.

To prove prejudice under *Strickland*, a petitioner must show a reasonable probability that the result of the proceeding would have been different. *See Strickland,* 446 U.S. at 694. A reasonable probability is one sufficient to undermine the outcome. *Id.* Johnson has presented no evidence that Spradley received any "deal" in exchange her testimony. Johnson cannot show a reasonable probability that the outcome of the trial would have been any different had his attorney questioned Spradley about a plea deal without some evidence that there was an incentive for her testimony. Here, Johnson has offered no such evidence.

> G. <u>Johnson cannot show ineffective assistance for failing to seek a mistrial.</u>

Finally, Johnson asserts his attorney was ineffective by failing to move for a mistrial "after the State had conferred with a sequestered witness to evade a violation" of *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 1-2 at 23. Johnson believes it is likely that the State coached Detective Fairbanks when the prosecutor spoke to the detective outside the presence of the court reporter.

The appellate court noted that article 615 of Louisiana's Code of Evidence allows an attorney to confer with sequestered witnesses. ECF No. 1-3 at 6. But, Johnson's claim that the witnesses were coached is conclusory. The state courts found that there was no support for Johnson's claim , so there were no grounds for a mistrial. As noted above, the failure to file a meritless motion or objection is not ineffective assistance. *See Clark*, 19 F.3d at 966.

Furthermore, as the appellate court noted, Detective Fairbanks was specifically asked about whether he received a bloody comforter. ECF No. 1-3 at 6. The detective testified that he received a call about a comforter, but did not retrieve it. Sgt. Bates testified that he examined a comforter, and he did not see bloodstains. *Id.*

Because there were no grounds for a mistrial, Johnson cannot show that, absent counsel's alleged error, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### III. Conclusion

Because Johnson cannot meet his burden under *Strickland* and § 2254, IT IS RECOMMENDED that the Petition for Writ of Habeas Corpus be DENIED and DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A

courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

    SIGNED on Thursday, March 28, 2024.

                                              JOSEPH H.L. PEREZ-MONTES
                                              UNITED STATES MAGISTRATE JUDGE